JUDGE LINDSAY
delivered the opinion of the court.
Low & Whitney and other judgment creditors of J. A. Blinco sued out their executions in March, 1859, and in April thereafter caused them to be levied on a tract of seventy-six acres of land, as the property of their debtor. Prior to all this, on the 30th of June, 1858, the said debtor had sold and *333 conveyed this land to the appellee, B. B. Blinco. The deed, however, had not been properly acknowledged and lodged for record within eight months after its date, nor indeed at the time the land was levied on by the sheriff. In May, 1859, less than one month after the levies were made, and before the sheriff had attempted to sell, appellee procured his vendor to re-acknowledge his deed, and at once lodged it for record in the proper office. On the 27th of June the sheriff sold the land pursuant to the levies, and it was purchased by Low & Whitney. The right of redemption ivas afterward levied on and sold; it was also bid in by Low & Whitney. In January, 1861, they procured the sheriff to convey the land to them, and in 1868 put their deed, to record. This controversy is between the holder of the conveyance, bearing date June 30, 1858, and the execution purchasers.
Section 9, chapter 24, of the Eevised Statutes, provides that “no deed conveying any title to or interest in land for a longer time than five years, nor any agreement in consideration of marriage, shall be good against a purchaser for a valuable consideration, not having had notice thereof, or any creditor, unless the same be acknowledged by the party who shall execute the same, or be proved and lodged for record in the proper office, as prescribed by law.”
Section 15 of the same chapter provides that deeds made by residents of this state, to be good against a purchaser for a valuable consideration without notice, or any creditor, “except from the time the same shall be legally acknowledged or proved and lodged for record,” must be so lodged within eight months after the date thereof. Appellee failed to lodge his deed for record within eight months, and appellants insist that the acknowledgment and the lodging of the same after the execution liens had been perfected by the levies in no wise affect their title. The question thus raised has frequently been before this court for consideration, and the decisions *334 thereon are singularly inconsistent with each other. In the earlier cases it was held that a deed not lodged for record within the prescribed time was absolutely void as to any creditor.
In Morton v. Robards (4 Dana, 258) this construction of the statute was repudiated, the court holding that the legislature intended only to regulate legal conveyances, and to leave untouched the equities of the parties, and that while the legal title of a party not lodging his deed for record within eight months from its date was not good, yet his equity was unimpeachable, and that a title acquired under an execution sale with notice of such equity would be made to yield to it in a court of chancery.
In Halley v. Oldham (5 B. Mon. 233) the correctness of the doctrine of Morton v. Robards was doubted. 'It was, however, conceded that if the execution creditor was himself the purchaser, then notice to him before his purchase of the existence of the unrecorded deed would deprive him of its fruits, and that a court of equity might compel him to relinquish any-legal advantage he might have acquired under it.
Beconciling as far as practicable the various reported eases, we deduce from them the following views:
1. A purchaser at an execution sale, who has no notice of a title-bond or deed that has not been recorded within the prescribed time, will be protected in his title even in a comt of equity.
2. A purchaser with notice will also be protected, in case the execution creditor acts in good faith and without notice. Under such circumstances the creditor has the right to sell, and the purchaser necessarily takes all the title that the creditor can require the sheriff to sell.
3. That notice to the purchaser after his purchase does not affect him. He is by his purchase invested with an inchoate legal title, which he has the absolute right to perfect *335 by procuring a conveyance from the sheriff, and this right does not depend upon his being a stranger to the execution. In such cases the execution creditor is as much entitled to protection as a stranger.
4. That notice to the creditor at any time before he may purchase affects his conscience, and he may be compelled, in obedience to the equity evidenced by the bond or unrecorded deed, to transfer the legal title to the party against whom he ought not in good conscience to hold it. (Halley v. Oldham, 5 B. Mon. 235; Righter, &c. v. Forrester, &c., 1 Bush, 278.) The statutes before the court for construction in the cases from which these conclusions are drawn were substantially re-enacted by the adoption of the Revised Statutes in 1851, and again continued in force when the General Statutes were adopted in 1873. In view of these facts we feel constrained to adhere to. the doctrine announced, although it may not accord literally with the language of these statutes.
In this case it appears that the deed to appellee, was re-acknowledged and actually put to record in the proper office more than a month before appellants, who were the execution creditors, purchased at the sheriff’s sale. Besides, it is averred in the answer and petition of appellee, to which the record shows that appellants entered their appearance, that appellee gave to them actual notice of his deed and of its contents on the day of the sheriff’s sale, and before their purchase. This averment is not denied; and as appellants chose to go to trial without answering the petition of interpleader, it must for the purposes of this litigation be taken as true.
The petition of appellee is not in the nature of a petition by the claimant of attached property to be made a party defendant and allowed to assert his claim, as was the petition in the case of Graves, &c. v. Ward, &c. (2 Duvall, 301, 302), nor in the nature of an application by the claimant of real property to be allowed to appear and defend for his tenant.
*336 Appellee, B. B. Blinco, was necessarily made a defendant to the original action. His claim is antagonistic to that of appellants (the original plaintiffs). He could not become a party plaintiff in the action in which he was allowed to interplead, and the fact that he was by the court denominated a defendant and his petition styled his answer does not change his real attitude as to appellants nor the real character of his pleading. In his petition he sets out facts sufficient not only to defeat appellants’ action against Mrs. Blinco, but also to entitle him to affirmative relief against them. His petition is in the nature of a direct proceeding to call the alleged title of appellants into question, and to have it adjudged subordinate to his own. He alleges that Mrs. Blinco, the widow of the deceased execution debtor, held the land as his tenant. Such being the case, he not only held the legal title to but also the possession of the land, and was in a position to ask the court to quiet his title and possession, and to compel appellants to relinquish the claim asserted by them.
The judgment of the court dismissing appellants’ petition does not give to appellee all the relief to which he was entitled, but certainly appellants have no ground for complaint. Said judgment is therefore affirmed.
Judge Coker did not sit in this case.