In re DORAN.

MOORMAN v. BEARD.

(Circuit Court of Appeals, Sixth Circuit. June 15, 1907.)

Nos. 1,641, 1,645.

1. BANKRUPTCY—MODE OF REVIEW—ORDER DENYING PRIORITY OF CLAIM.
An order of a court of bankruptcy denying priority to a claim which has been allowed against an estate is one made in a controversy arising in a bankruptcy proceeding, and not one made in a bankruptcy proceeding,

and is reviewable by the Circuit Court of Appeals on appeal under Bankr. Act July 1, 1898, c. 541, § 25a, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432].
    [Ed. Note.—Appeal and review in bankruptcy cases, see notes to In re Eggert, 43 C. C. A. 9.]

2. SAME—CHATTEL MORTGAGE—IDENTITY OF MORTGAGED PROPERTY.
    A chattel mortgage given by a small retail merchant on his stock, containing no after-acquired property clause, cannot be enforced against stock on hand when he was adjudicated a bankrupt nearly a year and a half afterward, without proof that the goods were the same.

3. SAME—MORTGAGE—EFFECT OF WITHHOLDING FROM RECORD.
    Under Ky. St. 1903, § 496, which provides that no mortgage shall be valid "against a purchaser for a valuable consideration without notice thereof or against creditors" until lodged for record, as construed by the state Court of Appeals a mortgage is valid against the general creditors of a bankrupt where it was recorded prior to the filing of the petition in bankruptcy, although it was withheld from record for several months, during which time a large part of the indebtedness was contracted.

Appeal from the District Court of the United States for the Western District of Kentucky.

For opinion below, see 148 Fed. 327.

C. L. Faurest, for Moorman.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. The petitioner, Moorman, brings this matter here by petition for review and also by appeal, being doubtful, apparently, of the proper remedy. He filed a petition in the bankruptcy proceeding praying for the allowance of a claim for a debt of the bankrupt and for priority by reason of a mortgage given by the bankrupt securing it. Upon a hearing before the referee, his claim for the debt was allowed, but the priority claimed was disallowed. He applied for a review of the order disallowing priority to the District Judge, who affirmed the order of the referee. This left nothing in controversy but the question of the priority of the lien which the petitioner claimed under his mortgage. If the decision had been against his claim of debt, he could have brought the case here by appeal under section 25a, Bankr. Act of July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432], and its right to priority could have been settled if the debt was established, because the lien was a mere incident of the debt. This was so held by this court in Cunningham v. German Ins. Bank, 103 Fed. 932, 43 C. C. A. 377. But the claim for the debt having been allowed, only the incident remained, and that of itself was not sufficient to support an appeal under section 25a. The order was a decree in a controversy in a bankruptcy proceeding, and not an order in a bankruptcy proceeding proper, and therefore is not reviewable under section 24b. But we think the order of the District Court complained of may be reviewed under the authority of section 24a, which authorizes an appeal to this court, or a writ of error in controversies of this sort, in accordance with our decision in Re First National Bank of Canton, 135 Fed. 62, 67 C. C. A. 536. Such an appeal is one which is in conformity with appeals in other than bankruptcy cases.

The result is that we have before us an appeal in a cause in equity from a final decree—that is, final as to the particular controversy—and the scope of our inquiry includes the pleading and proofs in the court below. So far as the pleadings are concerned, they are in very crude shape. And so of the evidence, if it is distinguishable at all from the pleading. They consisted of the original affidavit of the petitioner in proof of his claim, including as exhibits the note and mortgage on which his claim was predicated. On this footing, and without further pleading, he went before the referee and asked for an order declaring the priority of his claim over those of the other creditors, and that he be paid out of the proceeds of the sales of the real and personal property remaining in the hands of the trustee the amount due him on his note and mortgage, the result of which would be that nothing would be left to other creditors after payment of the expenses of administration. The only thing which we find in the record indicating any pleading on the part of the trustee is the referee's statement that "at the time of the filing of said claim the trustee made oral objection to its allowance as a lien claim," and that, after the first hearing and before the denial of the petition for rehearing, the following objection was filed by the trustee to the proof of the claim:

"In the Matter of William H. Doran, Bankrupt. In Bankruptcy.

"The undersigned trustee, Morris H. Beard, respectfully submits and files objection to the allowance of the claim of Charles H. Moorman, filed herein and sought to be allowed as a lien claim, upon the following grounds:

"Because he is informed and believes to be true that the said Charles H. Moorman and the bankrupt, William H. Doran, at the time of the execution of the mortgage filed herein, entered into the following fraudulent agreement, with respect to the rights of the said bankrupt's creditors:

"That the said Charles H. Moorman agreed not to place the said mortgage upon record, in order to enable the said bankrupt to obtain further credit from his creditors, and not to impair otherwise said bankrupt's credit, by keeping concealed the existence of said mortgage; that in pursuance of said agreement the said Moorman did not place the said mortgage upon record from the date of its execution until the 8th day of May, A. D. 1906, which was but 10 days prior to the filing of the petition in bankruptcy by the said bankrupt, which was done on the 18th day of May, A. D. 1906.

"Wherefore said trustee for said reasons prays that said claim be rejected as a lien claim.                                     M. H. Beard, Trustee."

We could disregard these informalities in the pleadings, for from the whole record we can understand the nature of the controversy. But when we come to look for the evidence, we are confronted with a more serious difficulty, for the first question is whether the petitioner made proof of such facts as would establish his right to a lien upon the property which came to the trustee. Notwithstanding the objection put upon the record by the trustee extended to only one defense, there was no admission of other facts which the petitioner was bound to prove. And the report of the referee shows that other grounds of defense were made at the hearing and considered by him. The rule in equity procedure is that where the allegations of the bill are not admitted by the answer the plaintiff must prove them. Young v. Grundy, 6 Cranch 51, 3 L. Ed. 149; Morris v. Morris, 5 Mich. 171; 2 Daniel's Ch. Pl. & Prac. (1st Am. Ed.) 973; 1 Bates, Fed. Eq. Proc. § 315.

The mortgage was given January 9, 1905. It covered certain real estate and a stock of goods belonging to the bankrupt, who was engaged in a mercantile business. The mortgage was recorded March 13, 1906. The mortgagor filed his petition in bankruptcy on May 18, 1906, which was therefore one year, four months, and nine days after giving the mortgage. The real estate subject to a homestead exemption was sold by the trustee for $150. The stock of goods which came to the trustee was sold by him for $620. The mortgage did not contain any after-acquired property clause. The referee reported that it did not "appear from the proof what, if any, part of the stock of goods, fixtures, etc., mentioned in the mortgage were still on hand at the time of filing the petition in bankruptcy, and that came to the hands of the trustee." And he further reported that the referee, subsequently to the original hearing, "suggested to the claimant that he would be given leave, if he desired to do so, to file amended proof showing what creditors, if any, had contracted their debts with knowledge of the existence of his said mortgage, and showing also what, if any, part of the goods on hand at the date of his said mortgage came into the hands of the trustee." "But," says the referee, "the claimant failed to offer such amended proof." Having regard to the nature of the business of the bankrupt, which was of a small retail dealer, and the amount of indebtedness which he incurred shortly after giving the mortgage as compared with the value of his stock when it was sold, we think it was incumbent on the mortgagee to prove what goods in stock on January 9, 1905, passed to the trustee on May 18, 1906, and that, in failing to make any proof on that subject, he failed to make good his claim to the proceeds of the stock of goods.

It sufficiently appears that the store and lot mentioned in the mortgage are the same real estate sold by the trustee on which he realized the sum of $150. And the second question is whether the petitioner, appellant, we will now call him, has established his right to claim a lien upon that. The mortgage in question was given January 9, 1905. It was recorded March 13, 1906. The petition in bankruptcy was filed May 18, 1906. The referee reports that, between the dates of the giving and the filing of the mortgage, the bankrupt created debts to the amount of $1,745.66. The Kentucky statute (section 496 of the Revision of 1903) declares that "no deed of trust or mortgage conveying a legal or equitable title to real or personal estate shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deeds shall be acknowledged or proven according to law and lodged for record." And in the case entitled In re Ducker, 134 Fed. 43, 67 C. C. A. 117, we held in a case of a conditional sale, which in Kentucky is held to be a mortgage and subject to the recording law above quoted, that, when the instrument had never been recorded, creditors who had become such after giving the mortgage, and who were therefore in position at the time of the filing of the petition in bankruptcy to seize the property covered by the unfiled mortgage, might have their equity worked out for them by the trustee in the bankruptcy proceedings. Section 67a of the bankrupt act expressly provides that "claims which for want of record or for other reasons could not have been valid liens as

against the claims of the creditors of the bankrupt, shall not be liens against his estate"; and 67b, that "whenever a creditor is prevented from enforcing his rights as against a lien created or attempted to be created by his debtor, who afterwards becomes a bankrupt, the trustee of the estate of such bankrupt shall be subrogated to and may enforce such rights of such creditor for the benefit of the estate." By "prevented," as the word is here used, we understand prevented by the supervening of bankruptcy proceedings.

But it is contended by counsel for the appellant that the Court of Appeals of Kentucky has construed the statute regarding unfiled mortgages as meaning that, if the mortgagee shall have filed his mortgage before the creditor shall have fastened a lien upon the property by judicial proceedings, his mortgage becomes valid from its date. If the object of the statute is to prevent the creditor from being lured into giving the mortgagor credit upon the false appearance of ownership in the one who is about to become his debtor, it becomes practically useless for its purpose, and rather worse than that (for the creditor being directed by the statute to the record office, and finding nothing there, would naturally act upon the assumption that no such mortgage existed), if, after the mischief is done by the creditor's parting with his property, the mortgagee may close the trap by filing his mortgage. Upon such construction the statute, instead of protecting the creditor, is a device for defrauding him. The creditor would in most cases be unaware of his danger until all chance of remedy is gone. And, in the case before us, it would look as if that is what has happened.

In the case of a purchaser of the property for value, it seems to be recognized that the equity of the transaction itself is the governing factor, and the right of the purchaser is fastened when the mischief is done, and the subsequent recording of the mortgage does not defeat that right. But the construction of the statute is one for the courts of the state, and not for us. The decisions in Kentucky have not been uniform in regard to the effect of the statute in question, but we think it must be conceded they tend in the direction of applying it in the case of creditors to the conditions which exist when the remedy is sought, and relegate the question of right to the question of activity and diligence in prosecuting the remedy. Helm v. Logan's Heirs, 4 Bibb (Ky.) 78; Campbell v. Mosby, Litt. Sel. Cas. (Ky.) 358; Graham v. Samuel, 1 Dana (Ky.) 166; Morton v. Robards, 4 Dana (Ky.) 258; Righter v. Forester, 1 Bush (Ky.) 278; Low v. Blinco, 10 Bush (Ky.) 331; Baldwin v. Crow, 86 Ky. 679, 7 S. W. 146; Wicks v. McConnell, 102 Ky. 434, 43 S. W. 205.

In the case of York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, the Supreme Court held that we were in error in supposing that the inchoate equity of creditors could be vindicated by the trustee in the court of bankruptcy, and reversed the judgment. That case is not precisely in point, because in the present case the mortgagee had recorded his mortgage before the petition in bankruptcy was filed, while in that case this had not been done. But the distinction is favorable to the appellant. The statutes of Ohio, where that case arose, and of Kentucky, are not identical, but so far as the

principal question is concerned they are not dissimilar. If in that case the equity of the creditors was lost by their failure to fasten it before the bankruptcy proceedings, so here they must fail for a like reason, and because the mortgagee had filed his mortgage and made himself secure before the petition in bankruptcy was filed.

It appears that it was claimed before the referee that the mortgage in question was void because it was withheld from record by agreement in order to give the mortgagor a false credit. But the referee in his report, although he recognized the presence of such an issue, ignored it for the reason that he put his decision upon another ground. It is to be regretted that this inquiry was not pursued. The keeping of both his mortgages from record for so long a time in the circumstances shown was calculated to excite suspicion. But as no evidence on this subject is reported, we have nothing but the bare fact of the failure to record, which, under the Kentucky decisions, is not of itself sufficient to justify a finding that there was an agreement between the parties to that effect.

The order of the court below will be modified so as to allow the appellant to recover the $150 realized by the trustee from the store and lot. The costs here will be equally divided.